STATE EX REL. W. SEI, Relator, v. GEORGE F. HAID, WILLIAM DEE BECKER, SIMON G. NIPPER, Judges of the St. Louis Court of Appeals.—61 S. W. (2d) 950.

Division One, June 12, 1933.*

---

*NOTE: Opinion filed at October Term, 1932, April 20, 1933; motion for rehearing filed; motion overruled at May Term, June 12, 1933.

*Hall & Dame* for relator.

*Woodward & Evans* for respondents.

HYDE, C.—This is a proceeding in certiorari to quash the opinion of the St. Louis Court of Appeals in the case of Sei v. Guthrie & Company, 50 S. W. (2d) 664. The St. Louis Court of Appeals there reversed a judgment of the circuit court in favor of relator and remanded the cause with directions to set aside the award of the Commission. The facts, hereinafter stated, are shown by the opinion of the St. Louis Court of Appeals, where we must go to get them. [State ex rel. Koenen v. Daues, 288 S. W. 14; State ex rel. Arndt v. Cox, 327 Mo. 790, 38 S. W. (2d) 1079; State ex

rel. Silverforb v. Smith, 43 S. W. (2d) 1054; see, also, State ex rel. Union Biscuit Co. v. Becker, 316 Mo. 865, 293 S. W. 783.] Relator, on August 11, 1928, sustained a fractured skull and other bruises when an iron rod fell on his head. He was provided medical attention and paid compensation by his employer through its insurer. He filed a claim with the Workmen's Compensation Commission in due time and was given a hearing in September, 1929. On September 26, 1929, after a hearing, followed by a review by the full Commission, an award was entered for fifty-five weeks of temporary total disability which was for such disability from the date of the accident to the first day of September, 1929. The Commission's finding of fact was that there was no further disability, either permanent or temporary, total or partial, after that date. Relator did not appeal and was paid this compensation. The evidence upon that hearing is stated in the opinion of the St. Louis Court of Appeals, as follows:

"The employee testified. . . . He was temporarily dazed, and was taken immediately to the office of Dr. Webb, who sewed up the cut in his head and sent him to St. Mary's Hospital. He remained in this hospital for a short time, and then reentered another hospital, where he was placed under the care of Dr. Carrol Smith. He testified that he had been unable to do any work since the date of the accident, and at the time of the hearing was growing weaker and suffered from dizziness, headaches, pressure in his head, and a jerking in his throat, which caused him to vomit.

"Dr. Smith testified that he first saw the claimant on August 16, 1928, and commenced to treat him on October 2, 1928, and from that time he was under the doctor's care, until February 2, 1929. This doctor also made an examination on September 3, 1929, a day before the hearing. When the claimant was first examined he was found to be suffering from laceration of the scalp, a fractured skull, and a bruise on the left arm just below the shoulder joint. The care and treatment given him between October, 1928, and February, 1929, was mostly systematic treatment. The claimant complained of dizziness, darkness before his eyes, pressure about his temples and the back of his head, numbness about the feet and arms, and general weakness. There was no evidence of organic brain injury, and on February 2, 1929, there was no evidence of any physical injury. At this time claimant was suffering from psychoneurosis. At the examination on September 3, 1929, claimant complained of tightness in his chest and inability to talk well. He said that he would choke up in his throat and have dizzy spells and at time would shake all over. He again complained of weakness, pressure on the side of his head, and difficulty in swallowing. There was no sign of injury, but some increased activity in the reflexes. The same diagnosis of psychoneurosis was made. After this examination, Dr. Smith's opin-

ion was that if the claimant had engaged in some light form of work his condition would have been normal at the time of the hearing.

"Dr. Unterberg stated that he examined the claimant on January 22, 1929. He said claimant then complained of pressure on the top of his head and of pain in his head, which moved over to his eyes, and stated that he was growing weaker and that his arms and legs were numb; that when he walked for any distance he became nauseated and sometimes vomited; that it was necessary for him to go through peculiar movements with his mouth and throat in order to swallow. The reflexes were normal, with the exception of some tremor of the eyelids, lips and tongue. The claimant was very emotional, but not suffering from any organic injury. This doctor stated he was suffering from psychoneurosis, with emotional instability, but this was not permanent, and should be cured with proper treatment and a settlement of any claims he might have."

More than a year after this final award, relator filed an application for a rehearing under Section 42 of the Compensation Act, Section 3340, Revised Statutes 1929, "on account of a change in condition in that claimant's former temporary disability had become a permanent injury and disability." A hearing was held in January, 1931, and a temporary award was made, on January 31, 1931, of "temporary total disability from September 1, 1929, to July 16, 1931, on the theory that the claimant had shown a change in his condition for the worse since the award of September 26, 1929." The Commission found that relator "had been unable to work since that award was issued and had been temporarily totally disabled from the date of the accident." Thereafter, a final award for temporary total disability was made, which was sustained by the circuit court, upon the employer's appeal. It is the opinion of the St. Louis Court of Appeals, determining the employer's appeal and reversing the judgment of the circuit court, which we are asked now to quash.

The evidence upon the second hearing was stated by the St. Louis Court of Appeals as follows:

"The claimant testified that he had been unable to work since the date of his injury and was suffering from headaches and dizziness; that the dizziness and pain in his head was continuous. He stated he had been under the care of Dr. Lamb. His testimony revealed at this hearing that he was suffering from practically the same symptoms that had existed prior to August 31, 1929.

"Dr. Lamb testified that he began treating the claimant some time in October or November, 1929; that the treatment consisted of nerve sedatives and medicine for his stomach. He saw him once or twice a month; that claimant complained of headaches, inability to swallow, nausea, vomiting and vertigo. He was suffering from a general nervous condition, which was indicated by tremor. At the time of

the hearing plaintiff had not improved, and, if anything, was not as well as he had been a year before. The diagnosis was again psychoneurosis, and claimant was not able to do any manual labor. The doctor was unable to say whether or not the condition was permanent, but that it was possible that he would be well in a year if he received proper treatment from some neurologist. The claimant told this doctor that he had been suffering from the same symptoms since the date of the injury.

"Dr. Miller testified that he had made an examination of the patient's ears at the request of the employer. He found a small perforation of the left ear drum, with a discharge of pus, which indicated an acute catarrhal middle ear discharge. There was no impairment of hearing and no involvement of the central nervous system. From the history of the case he stated there did not seem to be any connection between the injury and the ear condition.

"Dr. Carroll Smith again testified at this hearing that he had not seen the claimant from September 3, 1929, until January 9, 1931. He examined him on this latter date, and again on January 12, 1931. With the exception of the ear complaint, the symptoms described by the patient were the same on January 9, 1931, as they were prior to September 3, 1929. His general condition was about the same, and no marked change was noted. There were no signs of any injury to the nervous system, and the same diagnosis of psychoneurosis was made. In this doctor's opinion the claimant would have been improved if he had gone to work and forgot about himself; that his future depended entirely upon his own mental attitude and his surroundings. He stated that he thought his condition was a psychic one, and that after claimant began to get interested there was no trembling or shaking. He said he did not think the claimant was deliberately putting on those symptoms; that he thought he had probably gotten into the habit of doing those things unconsciously; that the permanency of his condition depended on his mental attitude and his surroundings, where he could get back to doing something in order to take his mind off of his own condition.

"Dr. Unterberg again testified that he had examined the claimant on January 8, 1931, and listened to his complaints, and made his second examination without any reference to the first, and was surprised to see how remarkably alike the two were. The claimant was suffering from psychoneurosis without any organic injury. He also stated that the claimant might be given some treatment which would educate him up to the theory of life that included work, but it might be necessary to isolate him entirely; that with his mental condition as it was the payment of compensation would tend to aggravate his condition.

"Dr. Jacobson testified that he examined the claimant the day before the hearing. He complained of headache, nausea, dizziness

and vomiting. The reflexes were normal, and an examination of the heart and lungs and abdomen did not reveal any abnormalities. He had a tremor of the tongue and twitching movement of the muscles of the throat. The general condition was apparently good. He diagnosed the case as psychoneurosis, and stated he did not think claimant would be able to work for a year, although the probability was that he would recover under the direction of a nerve specialist. He did not think that the payment of compensation would have any particular effect upon the condition of the claimant."

The conclusion of the St. Louis Court of Appeals about this evidence was stated in their opinion as follows:

"An examination of the record in this case, in our opinion, shows no material or substantial change in the claimant's condition from the time the final award was made upon the last hearing. It will be observed that all of the doctors, as well as claimant himself, enumerated his symptoms and his ailments as almost identically the same as upon the former hearing in so far as any of his symptoms or ailments had to do with his previous or original injury."

Relators' claim is that the opinion of the St. Louis Court of Appeals is in conflict with the opinion of this court in Wheeler v. Missouri Pacific Ry. Co., 328 Mo. 888, 42 S. W. (2d) 579, in its construction of Section 42 of the act, Section 3340, Revised Statutes 1929, the applicable part of which is, as follows:

"Upon its own motion or upon the application of any party in interest on the ground of a change in condition, the Commission may at any time upon a rehearing after due notice to the parties interested review any award, and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this chapter."

The Court of Appeals said: "There is no question that, under the circumstances enumerated in this section, the Commission may change the final award."

The Court of Appeals further said:

"It is evident that a continued incapacity of the same kind and character and for the same injury for which an award has been made is not a change of condition within the meaning of the statute above referred to. This statute was not intended to afford a method of correcting errors made in fixing the amount of the original award, but it was for the purpose of enabling the employer or the employee to end, terminate or increase the compensation previously awarded, provided there was a change in condition subsequent to the entry of the original award." The Court of Appeals then held: "There is no substantial evidence in this record tending to show any change in claimant's condition subsequent to the final award made by the Commission prior to this hearing. If the evidence could be said to indicate any change, it was for the better, and not for the worse.

In our opinion there is no substantial evidence in this record authorizing the Commission in finding that there was a change in the physical condition of the claimant occurring subsequent to the rendition of the final award, and, therefore, the circuit court erred in affirming the award of the Commission.''

In the Wheeler case, supra, an employee sustained an injury to his eye which had resulted in some impairment of vision within ninety days after the accident. No claim was filed until more than a year, when the condition of his eye grew worse and resulted in total blindness. It was contended that the six months' limitation period did not commence to run until after he had completely lost the sight of his eye (the happening of the greatest possible injury from the accident), for which loss of sight his claim asked compensation. This court held that the limitation period commenced to run ''from the time it becomes reasonably discoverable and apparent that a compensable injury has been sustained.'' This court then stated:

''Our interpretation of the term 'injury' as used in section 39 of the act, of course, would not have affected claimant's right to compensation for the complete loss of the sight of his eye, had he filed his claim for a less disability or injury within six months after he received a compensable injury, for section 42 of the act empowers the commission to change an award. The purpose of the Legislature as disclosed by the act to our minds plainly shows that it was its intention to provide that the claim should be filed within six months after the receipt of *a* compensable injury by the employee and, should it transpire thereafter that the injury received has developed into a more serious injury compensable in a different manner, the commission should change the award if any previously made.''

We do not think these statements are conflicting. In the Wheeler case, this court said that the Commission may change a final award (by awarding more compensation) when, after the award is made, ''the injury received has developed into a more serious injury compensable in a different manner'' (which would be a change in condition); while, here, the Court of Appeals said that if there is a change in condition ''the Commission may change the final award.''

▮ The Court of Appeals goes further and states the converse of this proposition that when there is only ''a continued incapacity of the same kind and character'' (which is not a change in condition) the Commission cannot make a further award of compensation merely because it incorrectly determined the exact period of disability, in the first place, in making a final award. There is nothing in this construction of Section 42 of the act, Section 3340, Revised Statutes 1929, which conflicts with the construction of it made by this court in the Wheeler case because that decision does not hold that ''a continued incapacity of the same kind and character'' is a change in condition within the meaning of the statute. The Wheeler case only

holds that there is such a change in condition when the "injury received has developed into a more serious injury compensable in a different manner." Therefore, the opinion of the Court of Appeals, in this case, does not conflict, either directly or inferentially, with the Wheeler case in holding that if the Commission finds that a claimant has or did have a certain period of disability resulting from a certain condition caused by an accident and makes an award therefor, then claimant cannot become entitled to another award by merely showing that this same condition, which existed prior to the award, caused or would cause a longer period of disability than the Commission found it did or would cause.

We think such a construction is sound for two reasons:

■ First: Section 3342, Revised Statutes 1929, says "the final award of the Commission shall be conclusive and binding unless either party to the dispute shall within thirty days from the date of the final award appeal to the circuit court." Therefore, if the Commission determines as a fact that a condition, caused by an injury, has resulted or will result in a certain period of compensable disability and no appeal is taken (or if one is taken and the Commission's finding is upheld) then that fact is forever established and no one will be heard to claim that the same condition did or will result in either a greater or less period of compensable disability.

■ Second: Section 3344, Revised Statutes 1929, provides that "a temporary or partial award may be made, and the same may be modified from time to time to meet the needs of the case, and the same may be kept open until a final award can be made." Therefore, if the Commission feels that it cannot, at the time of any hearing, with reasonable accuracy, determine the period of compensable disability, it is its duty to make partial awards from time to time until it can do so. When the Commission does decide the question and make a final award, it will be presumed that it has done its duty under this section and acted properly in making a final award at the time it did so. [Waterman v. Chicago Bridge & Iron Works, 329 Mo. 688, 41 S. W. (2d) 575.]

It is the purpose of the Compensation Act to give an employee compensation, for injuries from accidents arising out of and in the course of his employment, within the limits fixed by the act, for the full time and to the full extent he is actually disabled but no more. For that reason, in order to more accurately gauge this matter, than it was possible for a common-law jury to do upon a single hearing, temporary awards are authorized, Section 3344. Likewise, as an additional safeguard against developments, which cannot be foreseen at the time a final award is made, a further "award ending, diminishing or increasing the compensation previously awarded" is authorized when there has been a change in condition,

Section 3340. Courts are enjoined by the act that in carrying out this purpose, its provisions "shall be liberally construed with a view to the public welfare." [Sec. 3374, R. S. 1929.] However, this does not authorize extending the terms of the act beyond what they plainly say nor change the fundamental principle that controversies about matters of fact must be settled somewhere and as soon as reasonably possible.

Section 3340 clearly says that the only ground for reviewing an award and making another "award ending, diminishing or increasing the compensation previously awarded" is "a change in condition." Therefore, an injured employee cannot come before the Commission and have another award. by saying "my condition is the same as it was when you made me an award for a definite period of disability, but my disability has lasted or will last longer than that. I can prove now that you were mistaken about how long I was or would be disabled." If that were true, the Commission would never finish a case until it had given the maximum allowed by the act. What an injured employee must show to get a further award is a condition that since the award has become substantially worse (developed into a more serious injury compensable in a different manner as said in the Wheeler case); not that his condition was always worse than the Commission found it to be. He must show that since the original award something, not contemplated, has happened that either made his condition grow gradually and progressively worse, or that has resulted in an occurrence in the nature of a relapse, so that, after making a partial recovery before the award, he has since again become worse. On the other hand, neither can an employer come in and get an award diminished by showing that the condition of the employee, existing at the time the original award was made, did cause a shorter period of disability than the Commission found it had; nor by showing that although the same condition still existed it would cause a shorter period of disability than the Commission found it would. An employer, to be entitled to an order diminishing an award, must show that the original condition, upon which the award was predicated, no longer existed either because of a gradual and progressive improvement which had finally resulted in a substantially improved condition or because the original condition had suddenly cleared up.

The principal error here was that the Commission did not try the question presented in the application, namely: Had the relator's condition become that of permanent total disability? It did not even try the question of whether, since September 26, 1929, when the Commission found relator fully recovered and able to go back to work, his condition had again changed and after getting better (as they found he had), became worse. What the Commission did was to go behind its own finding, that between September 1 and September

26, relator had recovered to such an extent that he had no compensable disability after September 1, and made a new finding that its original finding (unappealed) was wrong and that relator was in fact totally disabled from September 1 to September 26, and had been ever since his accident. This the Commission had no authority to do. What it should have done was to have tried only the question of whether, since September 26, 1929, there had been a substantial change in relator's condition.

In addition to the alleged conflict with the Wheeler case, relator contends that the opinion of the Court of Appeals conflicts with the holding of this court in Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S. W. (2d) 130, that findings of fact by the Commission when supported by any substantial evidence are binding upon appellate courts. There is no conflict with this decision because the Court of Appeals recognizes that rule. It is true that the Commission made a finding of a change in condition for the worse. They based it, however, on the conclusion that their former finding, that his disability ended September 1, 1929, was wrong and the new finding, they then made, that relator had never recovered but was disabled at all times since the accident. The Court of Appeals reviewed the testimony and held that there was no substantial evidence of a change in relator's condition since September 26, 1929, when the final award was made. We cannot decide, upon certiorari, whether or not if the same facts were presented to us, we would hold that they do amount to substantial evidence of such a change in condition. If we had ruled the question of sufficiency of the evidence to show a change in condition under the statute upon the same or similar set of facts, then if the Court of Appeals reached a different conclusion, there would be a conflict which would justify quashing the Court of Appeals' opinion upon certiorari. However, we are concerned upon certiorari only with a conflict. [State ex rel. Northwestern Natl. Ins. Co. v. Trimble, 323 Mo. 458, 20 S. W. (2d) 48; State ex rel. Silverforb v. Smith (Mo.), 43 S. W. (2d) 1054 and cases cited; State ex rel. Consolidated School Dist. No. 2 v. Haid, 328 Mo. 739, 41 S. W. (2d) 806.] Otherwise, the hearing on certiorari would merely be an appeal from the Court of Appeals to this court, which our Constitution does not allow. As was said by this court in State ex rel. Cox v. Trimble, 312 Mo. 322, 279 S. W. 60, where the Court of Appeals held that a demurrer to the plaintiff's evidence should have been sustained: "As long as said court promulgated no rule of law which could be said to conflict with a former ruling of this court on the same or similar facts, it had the inherent right to determine the issues involved, whether its rulings be right or wrong (citing cases). Before the opinion of the Court of Appeals in sustaining a demurrer to the evidence can be legally quashed by this court on certiorari, it would have to appear affirmatively from

the record that the opinion of said court is in conflict with some designated opinion of this court based on similar facts.'' [See, also, State ex rel. Koenen v. Daues (Mo.), 288 S. W. 14; State ex rel. Maclay v. Cox, 320 Mo. 1218, 10 S. W. (2d) 940; State ex rel. City of Macon v. Trimble, 321 Mo. 671, 12 S. W. (2d) 727; State ex rel. St. Louis-San Francisco Ry. Co. v. Haid, 327 Mo. 217, 37 S. W. (2d) 437; State ex rel. St. Louis-San Francisco Ry. Co. v. Cox, 329 Mo. 292, 46 S. W. (2d) 849.]

The decision of the St. Louis Court of Appeals in Sei v. Guthrie & Company, 50 S. W. (2d) 664, was therefore not in conflict with our decisions, and our writ is ordered quashed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.