Terry **BUNKER**, Respondent,

v.

**RURAL ELECTRIC COOPERATIVE,**
**Appellant.**

No. WD 58931.

Missouri Court of Appeals,
Western District.

June 5, 2001.

Mark J. Hoffmeister, Overland Park, KS, for appellant.

Timothy Blake, Kansas City, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN, and PATRICIA BRECKENRIDGE, Judges.

ELLIS, Judge.

Terry Bunker was employed by Rural Electric Cooperative of Nodaway Worth County ("Rural Electric") in Maryville, Missouri. On March 31, 1983, while repairing electrical lines damaged in an ice storm the previous weekend, Bunker accidentally came in contact with an electrical current and received electrical burns on his left hand, right leg, back, and buttocks.[1] The injuries ultimately resulted in the amputation of his left arm and right leg.

On April 20, 1984, Mr. Bunker filed a claim for compensation with the Division of Workmen's Compensation (Division). Based on an agreed statement of facts submitted by the parties, Mr. Bunker was awarded $100.51 per week for life for permanent total disability.

After his accident, Mr. Bunker was fitted for an arm prosthesis that was used for cosmetic purposes only. Mr. Bunker attended physical therapy sessions in an attempt to fit him for a prosthetic leg. But due to the level of his amputation[2] and the discomfort from wearing the prosthetic leg, Mr. Bunker could not use the prosthesis, and his physical therapy ended before April 23, 1986. Because he could not use a prosthetic leg, Mr. Bunker has been

---

1. The facts surrounding Mr. Bunker's accident are set out in more detail in *Bunker v. Association of Missouri Electric Cooperatives,* 839 S.W.2d 608 (Mo.App. W.D.1992).

2. His leg amputation is a complete hip disarticulation, meaning the leg was amputated basically at the hip.

dependent upon a wheelchair for ambulating purposes since 1983.

Mr. Bunker did not work after his accident, but volunteered his time to a non-profit organization for burn victims and he began taking college classes. After graduating from Park College in March 1994 with a bachelor's degree in accounting, Mr. Bunker was hired to work for the City of Kansas City as a revenue agent for the Revenue Division. After working approximately two years for the Revenue Division, Mr. Bunker transferred to the Department of Parks and Recreation as an accounting clerk III. Mr. Bunker left his job with the City of Kansas City and began working for Investors Fiduciary Trust Company in January 1998, doing accounting work.

At some point after Mr. Bunker became employed, Rural Electric suspended payment of permanent total disability benefits and on December 9, 1999, Rural Electric filed a motion with the Labor and Industrial Relations Commission ("Commission") to terminate the total disability payments pursuant to § 287.470,[3] arguing that Mr. Bunker was employed in the open market and was no longer permanently and totally disabled. Alternatively, Rural Electric sought a determination that suspension of benefits was proper under § 287.220.2. The Commission remanded the matter to the Division for an evidentiary hearing. In lieu of an evidentiary hearing, the parties stipulated to the submission of Mr. Bunker's videotaped and transcribed deposition. On July 18, 2000, the Commission denied Rural Electric's motion for termination of benefits and determined that suspension of permanent total disability benefits was improper. The Commission ordered Rural Electric to pay Mr. Bunker 88 weeks of past benefits in the amount of $100.51 per week plus interest, and then continue paying benefits for

life as originally ordered. The Commission also granted Mr. Bunker $2,211.22 in attorneys' fees and $189.04 in expenses. Rural Electric appeals.

■ Because the issues in this case involve the interpretation of portions of a statute, our review of the decision of the Labor and Industrial Relations Commission is essentially *de novo*. "Decisions of the Labor and Industrial Relations Commission that are clearly interpretations or applications of law, rather than determinations of fact are reviewed for correctness without deference to the Commission's judgment." *Files v. Wetterau, Inc.*, 998 S.W.2d 95, 97 (Mo.App. E.D.1999). Because the parties agreed upon the facts, and the award was clearly based on the application of the law, we will independently review the cause and may correct the award when the application of law is erroneous. *Mickey v. City Wide Maint.*, 996 S.W.2d 144, 147 (Mo.App. W.D.1999).

■ Rural Electric brings two points on appeal. In its first point, Rural Electric contends the Commission erred in failing to terminate Mr. Bunker's permanent total disability benefits. Rural Electric argues that termination of benefits is authorized by § 287.470 because there was a "change in condition" when Mr. Bunker educated himself and obtained employment. It contends the Commission erred when it interpreted "change in condition" to mean a change in *physical* condition. We disagree. Initially, we note that Rural Electric failed to mention any of the cases hereinafter discussed in this section of the opinion in its principal brief. Indeed, Rural Electric did not cite a single case construing § 287.470 in its principal brief. We again remind all members of the Bar that they should be ever mindful of the

---

**3.** All statutory references are to RSMo (1994)     unless otherwise indicated.

requirements of Rule 84.04 when preparing briefs for filing in this Court.[4]

Section 287.470 authorizes the Commission to terminate or modify a previous award of workers' compensation upon a showing of a "change in condition." [5] When interpreting statutes, the appellate court's primary responsibility is to ascertain the intent of the legislature from the language used in the statute and to give effect to that intent if possible. *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.*, 34 S.W.3d 266, 279 (Mo.App. W.D.2000). The language used in the statute should be given its plain and ordinary meaning. *Id.* In order to understand the intent of the Legislature, it is helpful to review how the language in the statute has been interpreted in the past.

When we trace the evolution of the statute and the case law interpreting the language used, we find that the Legislature first enacted § 3340, RSMo.1929, which contained language identical to that in the present statute, § 287.470. *See State ex rel. Sei v. Haid,* 332 Mo. 1061, 61 S.W.2d 950, 952 (1933). In *Sei v. A. Guthrie & Co.,* 50 S.W.2d 664 (Mo.App. E.D.1932) (hereinafter *"Sei I"*), the appellate court determined that "a continued incapacity of the same kind and character and for the same injury for which an award has been made is not a change of condition within the meaning of [§ 3340]." *Id.* at 666; *See also Winschel v. Stix, Baer & Fuller Dry Goods Co.,* 77 S.W.2d 488, 491 (Mo.App. E.D.1934). The court found that the cir-

cuit court erred in affirming the Commission's modification of a workers' compensation award under § 3340 because "there [was] no substantial evidence in [the] record authorizing the commission in finding that there was a change in the physical condition of the claimant occurring subsequent to the rendition of the final award...." *Sei I,* 50 S.W.2d at 666. Because Claimant's physical condition had not changed since the original compensation award, there was no basis for modifying that award.

The Supreme Court of Missouri accepted the *Sei I* case in a proceeding in certiorari to quash the opinion entered by the Court of Appeals. *State ex rel Sei v. Haid,* 332 Mo. 1061, 61 S.W.2d 950 (1933) (hereinafter *"Sei II"*). The Supreme Court affirmed the decision of the Court of Appeals and found that:

> Section 3340 clearly says that the only ground for reviewing an award and making another "award ending, diminishing or increasing the compensation previously awarded" is "a change in condition."

> \* \* \*

> [A]n employer [cannot] come in and get an award diminished by showing that the condition of the employee, existing at the time the original award was made, did cause a shorter period of disability than the commission found it had; nor by showing that, although the same condition still existed, it would cause a

---

**4.** We also would encourage all members of the Bar to periodically review Rule 4–3.3(a)(3) of the Rules of Professional Conduct relating to adverse legal authority.

**5.** The full text of § 287.470 is as follows:

Upon its own motion or upon the application of any party in interest on the ground of a change in condition, the commission may at any time upon a rehearing after due notice to the parties interested review any

award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this chapter, and shall immediately send to the parties and the employer's insurer a copy of the award. No such review shall affect such award as regards any moneys paid.

shorter period of disability than the commission found it would. An employer, to be entitled to an order diminishing an award, must show that the original condition, upon which the award was predicated, no longer existed either because of a gradual and progressive improvement which had finally resulted in a substantially improved condition or because the original condition had suddenly cleared up.

*Id.* at 954.

Section 3340 was reenacted as § 3730 in 1939. Section 3730 was identical to § 3340, as well as to the present § 287.470. When interpreting the "change in condition" phrase contained in § 3730, this Court adopted the analysis set forth in *Sei I* and *Sei II. Brammer v. Binkley Mining Co. of Missouri,* 244 S.W.2d 584, 588 (Mo.App. W.D.1951); *Adkins v. Bramhall,* 233 S.W.2d 36, 40 (Mo.App. W.D.1950).

▪ In 1949, the Legislature enacted § 287.470. As noted earlier, the current version of § 287.470, RSMo (1994), contains the same language that was used by the Legislature in § 3340, RSMo 1929, § 3730, RSMo 1939, and § 287.470, RSMo. 1949. " 'Where the Legislature, after a statute has received a settled judicial construction, reenacts or carries forward without change, or reincorporates the exact language theretofore construed, it is to be presumed that it knew of and adopted the judicial construction previously given to the statute.' " *Int'l Bus. Machs. Corp. v. Dir. of Revenue,* 958 S.W.2d 554, 559–60 (Mo. banc 1997) (Dowd, J., concurring) (quoting *Roy F. Stamm Electric Co. v. Hamilton–Brown Shoe Co.,* 350 Mo. 1178, 171 S.W.2d 580, 583 (1943)). Thus, it is clear from the Legislature's continued reenactment of the same language, only changing the statute's number, that the Legislature intended for the statute to carry the interpretation previously given it by the courts.

Indeed, the issue is so well settled that there have been only a few cases in more recent times that even touch on the subject. In *Dunn v. Hussman Corp.,* 892 S.W.2d 676 (Mo.App. E.D.1994), the issue before the court was whether the Commission erred in rescinding its initial award, granting a rehearing, and then issuing a new award after the appeal period had expired. *Id.* at 680. But in the process of deciding that question, the court determined that § 287.470 did not authorize a rehearing in the case because there was no "change in condition" as required by § 287.470. *Id.* The court continued by stating that "Section 287.470 is only applicable in those situations where the claimant's original *physical* condition upon which the final award was predicated has materially improved or grown substantially worse." *Id.* (citing § 287.470 and *Kramer v. Labor & Indus. Relations Comm'n,* 799 S.W.2d 142, 145 (Mo.App. E.D.1990)) (emphasis added).

In *Kramer v. Bill's Marine Ltd.,* 897 S.W.2d 213–15 (Mo.App. E.D.1995), Employee filed a motion pursuant to § 287.470 to re-open his claim due to a change in his condition. *Id.* at 214–15. The Commission denied Employee's motion without an evidentiary hearing based on the fact that Employee's motion alleged a condition of the same character as the injury compensated for in the original order. *Id.* at 215. The circuit court affirmed the Commission's decision and Employee appealed. The Eastern District of this Court reversed and remanded the case to the circuit court based on a finding that the Employee alleged a condition in his motion that was "new and different." *Id.* at 218. While the court did not determine whether Employee was suffering from a "change in condition" under the statute, it did touch

on the interpretation of that phrase in its analysis:

> A changed condition warranting reopening an award must be causally related to the employee's work-related injury. Likely, the changed condition will be an unanticipated complication or worsening of the injured area compensated for in the original award and this changed condition may share some similar symptoms to the compensated injury.

*Id.* at 217.

The Southern District of this Court was confronted with a situation very similar to the case at hand in *Vandaveer v. Reinhart & Donovan Construction Co.*, 370 S.W.2d 156 (Mo.App. S.D.1963). In *Vandaveer*, the Employee was declared permanently and totally disabled by the Commission and awarded benefits accordingly. *Id.* at 157. Approximately two years after the final award was made, Employee became employed as a hospital attendant I by the St. Louis State School and Hospital, and a rehearing on Employee's benefits was held at Employer's request pursuant to § 287.470. *Id.* at 159. The Commission found that Employee had been "regularly hired...as other employees there in the hospital[,]" and that he received no special treatment in the hiring process because of his disability. *Id.* The Court of Appeals agreed and found that, at the time of the rehearing, Employee was not totally disabled as is defined by statute.[6] *Id.* at 161. But, the court did not end its analysis there, and instead, the court found that the fact that Employee obtained employment by virtue of a merit system "[did] not afford an adequate and complete answer to the question whether there had been a substantial change in [employee's] condition between the date of the final award and the date of rehearing...." *Id.* The court then examined the physical changes that had occurred to Employee between the date of the final award and the date of the rehearing and found that there were significant changes in Employee's physical condition during that time. *Id.* at 162. The court stated that "in determining whether there had been a substantial change in the condition of instant [employee], the Commission was not required to ignore the plain facts concerning his employment and the lay testimony with respect to his activities at the hospital." *Id.* at 162–63. It is evident that the court found the significant changes in the physical condition of Employee to be the determining factor in whether there was a "change in condition" under the statute.

In light of the judicial and legislative interpretation placed on § 287.470 for nearly 70 years, it borders on cavil to now argue that "change in condition," as used in the statute, means anything other than a change in the physical condition of the claimant since the original award of compensation was issued. *See Sei II*, 61 S.W.2d at 954; *Kramer*, 897 S.W.2d at 217; *Dunn*, 892 S.W.2d at 680; *Sei I*, 50 S.W.2d at 666. The interpretation placed on the statute is consistent with the Legislature's intent and desire not to establish a rule requiring an injured employee to remain completely inactive and inert to avoid jeopardizing his compensation for permanent total disability. *Kinyon v. Kinyon*, 230 Mo.App. 623, 71 S.W.2d 78, 82 (1934).

■ In this case, due to Mr. Bunker's injuries, his left arm and right leg were amputated. Since the final compensation award, Mr. Bunker was fitted with a prosthetic arm, which he uses only for cosmetic

---

6. "Total disability" is defined as the "inability to return to any employment and not merely the inability to return to the employment in which the employee was engaged at the time of the accident." § 287.020.7.

purposes, and a prosthetic leg, which he has not been able to use because of discomfort. Consequently, he continues to rely on a wheelchair for ambulating purposes. The physical therapy was terminated after it was discovered that Mr. Bunker could not use the prosthetic leg. Mr. Bunker continues to suffer from phantom limb pain from his amputations, pain where the limbs used to be, requiring him to take medication to help alleviate that pain. The pain is so intense and debilitating at times that he cannot concentrate and it has caused him to miss work on occasion.

Thus, there is no indication, in the case at bar, that Mr. Bunker's original condition, upon which the award was predicated, no longer existed at the time the Commission made its decision. *See Sei II,* 61 S.W.2d at 954. There has been no change in the injured area that he was compensated for in the original award. *See Kramer,* 897 S.W.2d at 217. There has been no gradual and progressive improvement in his condition resulting in a substantially improved condition, nor has his original condition suddenly cleared up. *See Sei II,* 61 S.W.2d at 954. Quite simply, there has been no change in Mr. Bunker's physical condition since the original award of compensation.

Accordingly, the Commission did not err in denying Rural Electric's request to terminate Mr. Bunker's compensation benefits. *See Sei I,* 50 S.W.2d at 666. Point denied.

In its second point on appeal, Rural Electric contends that it was proper for Rural Electric to suspend Mr. Bunker's permanent total disability benefits pursuant to § 287.200.2 because Mr. Bunker has obtained gainful employment through the use of a wheelchair, which acts as a substitute for an artificial limb. We again disagree with Rural Electric and hold that

Rural Electric had no right to suspend payments to Mr. Bunker.

Section 287.200.2 provides, in pertinent part, as follows:

All claims for permanent total disability shall be determined in accordance with the facts. When an injured employee receives an award for permanent total disability but by the use of glasses, prosthetic appliances, or physical rehabilitation the employee is restored to his regular work or its equivalent, the life payment mentioned in subsection 1 of this section shall be suspended during the time in which the employee is restored to his regular work or its equivalent.

Rural Electric concedes that Mr. Bunker has not been restored to regular employment through the use of his prosthetic arm because the prosthesis is used only for cosmetic purposes. Likewise, Rural Electric concedes that Mr. Bunker has never used a prosthetic leg, and any physical therapy that Mr. Bunker received was for the limited purpose of attempting to fit him for a prosthetic leg, which was unsuccessful. Thus, the only argument made by Rural Electric in point II is that a wheelchair is a prosthetic appliance, or if not, that it should be given the same treatment as a prosthetic appliance for purposes of § 287.200.2.

As stated earlier in this opinion, we must give the words in the statute their plain and ordinary meaning. The medical dictionary definition for "prosthesis" is, "an artificial substitute for a missing body part, such as an arm or leg, eye or tooth, used for functional or cosmetic reasons, or both." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1367 (28th ed.1994). Likewise, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY defines "prosthesis" as "an artificial device to replace a missing part of the body." WEBSTER'S 937 (10th ed.1994). Rural Elec-

tric admits in its brief that "[o]bviously, a wheelchair is not an orthopedic joint or prosthetic device and would never fit into the narrow, textbook definition of these terms." Instead of relying on the definition of the term, Rural Electric relies on *Mickey v. City Wide Maintenance,* 996 S.W.2d 144 (Mo.App. W.D.1999), to argue that a wheelchair should be considered a "prosthetic appliance" for purposes of the Workers' Compensation Law.

In *Mickey,* the question before this Court was "[w]here an employee is rendered a paraplegic due to a compensable injury, do modifications to a van to accommodate the loading and unloading of a wheelchair qualify as medical treatment under Section 287.140, RSMo Cum.Supp. 1998,[7] requiring they be provided by the employer and insurer." *Mickey,* 996 S.W.2d at 148. The analysis in *Mickey* included a detailed review of case law from other jurisdictions finding an obligation, under workers' compensation laws, to provide modifications to a van in order to accommodate a wheelchair. *Id.* at 149–50. The *Mickey* court found that, although § 287.140 did not specifically require an employer to expend money for renovations to a van as "medical treatment," the intention of the workers' compensation law is to "extend the benefits of the law to the fullest measure[;]" thus, under the facts of *Mickey,* the employer was required to make the investment to renovate a van so as not to cause irreparable injury to the claimant. *Id.* at 152. As a result, the case was reversed and remanded to the Commission for a determination of the employer and insurer's obligation. *Id.* at 153.

In its brief, Rural Electric states that "the Court in *Mickey* clearly concedes that a wheelchair should be considered the same as [an orthopedic joint or prosthetic device] for purposes of The Missouri Workers' Compensation Law." Rural Electric's reliance is misplaced. The *Mickey* court did not hold or even suggest, much less "concede," that a wheelchair is an orthopedic joint or prosthetic device under the Workers' Compensation Law as is asserted by Rural Electric. The court did cite several cases from other jurisdictions that considered a wheelchair to be an "appliance",[8] a necessary apparatus,[9] or an "orthopedic appliance,"[10] *Mickey,* 996 S.W.2d at 150, but there is certainly no mention in the opinion that a wheelchair is a "prosthetic appliance" under the Missouri Workers' Compensation Law.

The analysis in *Mickey* ultimately involved an acknowledgement that there is a split of authority on the issue of whether the employer and insurer have an obligation to provide modifications to a van to accommodate a wheelchair. After consideration of the broad and liberal purpose of the Missouri Workers' Compensation Law, the court determined that a reasonable interpretation of the statute would be to compensate Mickey for any necessary modifications to his vehicle. However, the court also noted that the decision "should not be interpreted to provide the support

---

7. Section 287.140.1, RSMo Cum.Supp.1998 provides, in pertinent part, as follows:

   In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

8. *Manpower Temp. Servs. v. Sioson,* 529 N.W.2d 259, 264 (Iowa 1995).

9. *Phillips Petroleum Co. v. Carter,* 914 P.2d 677, 679 (Okl.App.1995).

10. *Rieger v. Workmen's Compensation Appeal Bd.,* 104 Pa.Cmwlth. 42, 521 A.2d 84, 87 (1987).

for relief in cases which contain facts beyond those facts presented [in the case]." *Id.* at 152. *Mickey* does not support Rural Electric's argument.

Rural Electric also relies on *Bahner v. Bahner*, 606 S.W.2d 484 (Mo.App. W.D. 1980). In *Bahner*, Employee suffered a compensable injury to his spinal cord in 1971, and as a result, he was confined to a wheelchair. *Id.* at 485. On September 2, 1975, the Commission entered an award finding Employee to be permanently and totally disabled. *Id.* After extensive medical, surgical and hospital treatment, Employee completed his high school education and then earned his teaching degree at Central Missouri State University. *Id.* Employer sought to suspend Employee's life pension benefits pursuant to § 287.200.2. *Id.* The Employee apparently did not contest the suspension as he was not represented by counsel and the evidence was largely undisputed. *Id.* at 485–86. After a hearing, the Commission issued an order suspending Employee's life pension on the basis that Employee had obtained full time work. *Id.* at 486. The Commission, on its own motion, proceeded to give Employee a provision for nursing care in the amount of $75.00 per week. *Id.* The employer and insurer appealed the Commission's order, arguing that there was no basis for awarding nursing services. *Id.* Employee did not appeal the order suspending his life pension. *Id.* at 485–86. The court held that, based on the evidence before the Commission, there was no basis for awarding Employee nursing services. *Id.* at 487. The case was reversed and remanded to the circuit court with directions that the cause be remanded to the Commission for further hearing. *Id. Bahner* did not address the issue now before this Court.

■ There is no support in Missouri case law for Rural Electric's contention that a wheelchair should be considered a "prosthetic appliance" for purposes of § 287.200.2. Indeed, the most analogous case is *Four Rivers Home Health Care, Inc. v. Director of Revenue*, 860 S.W.2d 2, 4–5 (Mo.App. W.D.1993). In *Four Rivers*, this Court held that wheelchairs are not "prosthetic devices" as that term is defined in the Social Security Act and the Code of State Regulations, 12 CSR 10–3.852(2). *Id.* at 5. "The Social Security Act defines 'prosthetic devices' as 'devices (other than dental) which replace all or part of an internal body organ...including replacement of such devices, and including one pair of conventional eyeglasses or contact lenses furnished subsequent to each cataract surgery with insertion of an intraocular lens.'" *Id.* at 4 (quoting 42 U.S.C. § 1395x(s)(8) (1988)). The court found that a wheelchair does not replace the function of an internal organ and merely assists the skeleton. *Id.* at 4–5. Accordingly, the court reasoned that a wheelchair is not a "prosthetic device." *Id.*

■ In applying § 287.200.2, we must keep in mind the purpose behind the compensation law, which is "to make industry bear the burden of compensating employees for injuries arising out of, and in the scope and course of their employment ..." *Mickey*, 996 S.W.2d at 148. Moreover, the compensation law "is to be broadly and liberally construed and interpreted to extend benefits to the largest possible class and any doubt as to the right of compensation is to be resolved in favor of the employee." *Id.* Viewing the Workers' Compensation Law as required, to provide the biggest benefit to the largest number of people, and resolving doubt in favor of the employee, we cannot say that a wheelchair is a "prosthetic appliance" or that the use of a wheelchair is the equivalent of the use of a "prosthetic appliance" for purposes of § 287.200.2.

Rural Electric had no right to suspend Mr. Bunker's compensation benefits under the statute. And the Commission certainly did not err in ordering Rural Electric to pay the past-due benefits plus interest, as well as attorneys' fees and expenses. Point denied.

Judgment affirmed.

All concur.