**Vijaya POLAVARAPU, Respondent,**

v.

**GENERAL MOTORS CORPORATION, Appellant.**

No. 65885.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 12, 1995.

Application to Transfer Denied
May 30, 1995.

Daniel J. Harlan, St. Louis, for appellant.

Scott K. Kell, St. Charles, for respondent.

DOWD, Judge.

This is a workers' compensation case. Vijaya Polavarapu (Claimant) sought workers' compensation benefits for an occupational disease she developed while working for General Motors Corporation (Employer). The Administrative Law Judge (ALJ) found Claimant failed to establish a causal connection between her disease and an exposure to a hazard of the disease at work. The Labor and Industrial Relations Commission (Commission) reversed finding Claimant suffered from an occupational disease which rendered her whole body 75% permanently partially disabled. We affirm.

Claimant started working for Employer at its plant in Willow Run, Michigan, in January 1979. Her first job was applying undercoating to the inside of wheel wells. Later, she was moved to a job where she used a brush to apply sealer to a quarter panel. In this job, Claimant worked next to a plastisol sprayer and could not avoid inhaling the fumes from the plastisol. After working in this position for two years and nine months, Claimant was laid off. She was called back in June 1982 and was assigned to the paint shop where she used a cleaner called NAP-THA to clean the outside surfaces of the cars. Claimant testified she had to wear gloves when using the cleaner, and its strong smell bothered her. Next, Claimant was assigned to a repair area using a disk sander to remove paint defects. The sander created a lot of dust and large fans constantly blew dust up from the sander.

Claimant was transferred to the plant in Wentzville, Missouri, in April 1984. Here, she worked doing both wet and dry sanding. She also worked in the body shop as an assembler. This job was located between the grinding booth and the dry sanding line, both of which created a large amount of dust. In the fall of 1988, Claimant developed a persistent cough and started experiencing shortness of breath. She was on sick leave from January 16, 1989 through November 12, 1989. Claimant returned to work and was assigned to a job where she was not exposed to dust particles or fumes. Claimant testified she still works for Employer and still suffers from shortness of breath.

Dr. Steven Lillard, Claimant's treating physician, testified at the hearing. Dr. Lillard stated 80% to 90% of his practice is dedicated to treating pulmonary diseases. He began treating Claimant for her cough and shortness of breath in February 1989. After conducting a battery of tests, he referred Claimant to Barnes Hospital for an open-lung biopsy. The results of the biopsy were consistent with Hypersensitivity Pneumonitis (HP), which is a scarring disease caused by the introduction of an antigen into the lungs. Dr. Lillard opined Claimant developed HP as a result of the different polymers, plastics, sand and dust she inhaled into her lungs while working for Employer. He linked Claimant's HP to her work environment by using the "differential diagnosis" process whereby all possible sources of the antigens which can cause HP are eliminated one by one. Claimant's home was inspected for these antigens but none were found. However, Dr. Lillard stated Claimant's work environment could not be eliminated because she was consistently exposed to aerosolized plastic products, paints, sealants, and the fumes from these products. He found Claimant was 70 to 75% permanently partial-

ly disabled as a result of her lung condition and possibly only had three years to live.

Dr. Robert N. Bruce testified by deposition on behalf of Employer. He examined Claimant and found her lungs were 50% impaired due to interstitial pneumonitis, a condition consistent with HP. However, he testified he could find no link between Claimant's lung condition and her work environment. He found Claimant's lung condition was idiopathic because all known causes of the disease could be excluded. Dr. John A. McDonald, a professor of internal medicine at Washington University School of Medicine, also did a series of tests on Claimant. He was unable to conclude whether or not Claimant's lung problems could have been caused by substances she was exposed to at work.

Wes Norton, Employer's board certified industrial hygienist, also testified. He stated his job is to evaluate health hazards for Employer, and he is familiar with all the paints, plastics, sealers and solvents used by Employer. He stated no products containing isocyanates were used in either the Wentzville plant or the Willow Run plant from 1979–89. The Commission found Claimant's lung disease arose from her exposure to polymers, polyurethanes, plastic, sealants, plastisol, NAPTHA, sand and dust while working for Employer. Employer appeals.

We address Employer's first and third points on appeal together. In Point I, Employer alleges the Commission erred because it did not follow § 287.067, which states the requirements for an occupational disease to be compensable. RSMo Cum.Supp.1992. In Point III, Employer*alleges the Commission's decision to award Claimant workers' compensation benefits based on her occupational disease was not supported by competent and substantial evidence and was contrary to the overwhelming weight of the evidence.

■ Section 287.067.1 states, "[T]he term 'occupational disease' is hereby defined to mean a disease arising out of and in the course of the employment." To establish a claim for occupational disease, Claimant is required to show by competent and substantial evidence that there is a recognizable link between the disease and some distinctive feature of the job which is common to all jobs of that sort. *Id.; Webber v. Chrysler Corp.*, 826 S.W.2d 51, 54[4] (Mo.App.1992).

Employer argues Claimant's HP could not have been caused by her working conditions because Dr. Lillard stated her HP was caused by isocyanates, and there was no evidence the plastic polymers, paints and sealants Claimant was exposed to at work contained isocyanates. However, Dr. Lillard testified:

> [T]he spores or whatever is aerosolized is aerosolized in a form smaller than five microns, five microns is the size of whatever agent that you're putting into the lungs, beyond which will not go down deep in the lungs. When you aerosolize something or you have the spores, such as the ones I described, those are less than five microns, they will stay down inside the lungs, and that's how the disease progresses because the fumes, the chemical, whatever it is you're exposed to, that's triggering off this agent will stay down in the lungs because it's been aerosolized, and that is the triggering agent for setting off in this case the H.P.

■ Further, he stated Claimant's HP could have been caused by aerosolized polyurethane, plastisol, or some other aerosolized plastic based products used in her jobs. The Commission specifically found Dr. Lillard's testimony was more credible than that of Dr. Bruce. We must defer to the Commission's findings on issues involving the credibility of witnesses and the weight to be given their testimony. *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527[1] (Mo. banc 1993). Based on the record as a whole, we find competent and substantial evidence supports the Commission's finding Claimant suffered from an occupational disease. *See, Sellers v. Trans World Airlines*, 776 S.W.2d 502, 504[3] (Mo.App.1989). Points denied.

In Point II, Employer alleges the Commission's award of future medical expenses and treatment was erroneous because it was based on inadmissible testimony which violated the seven-day rule of § 287.210.3, RSMo Supp.1993. According to this section, the testimony of any physician who treated or examined the employee is admissible only if the physician's medical report is made avail-

able to the opposing party at least seven days prior to the hearing. § 287.210.3. In its brief, Employer admits its attorney was provided with a copy of Dr. Lillard's medical report eight days before the hearing. However, Employer argues Dr. Lillard's testimony about future medical expenses was inadmissible because his medical report did not contain any reference to future medical treatment. *See, Glickert v. Soundolier, Inc.*, 687 S.W.2d 674, 677[4] (Mo.App.1985) (holding a doctor is only allowed to testify about facts included in timely furnished reports). Employer further argues that the issue of future medical treatment was raised for the first time at the hearing.

At the hearing, Employer objected to the admission of Dr. Lillard's report, and Claimant withdrew her request for admission. Dr. Lillard's report was never admitted into evidence at the hearing nor was it included in the record on appeal. Therefore, we are unable to determine whether or not it contained any reference to Claimant's need for future medical treatment. However, even if Dr. Lillard's testimony about Claimant's future medical expenses was inadmissible, we find no prejudice because the Commission's award was supported by sufficient evidence apart from Dr. Lillard's testimony. *See, Strate v. Al Baker's Restaurant*, 864 S.W.2d 417, 421[7] (Mo.App.1993). Further, the issue of future medical treatment was raised prior to the hearing.

In permanent partial disability cases, the Commission's award may contain an allowance for the cost of future medical treatment. *Williams v. A.B. Chance Co.*, 676 S.W.2d 1 (Mo.App.1984). Further, a claimant is not required to present evidence of specific medical treatment or procedures which will be necessary in the future in order to receive an award for future medical care. *Bradshaw v. Brown Shoe Co.*, 660 S.W.2d 390 (Mo.App.1983).

In a letter to Employer's attorney dated April 18, 1990, more than two years prior to the hearing, Dr. McDonald described Claimant as "a young woman who clearly has the histopathic picture of *chronic* hypersensitivity pneumonitis." Dr. S.E. Godfrey's pathology report dated November 18, 1991, also described Claimant's type of lung disease as,

"progressive and generally unresponsive to corticosteroids or other therapy.... Survival once the disease has progressed into its advanced fibrotic stage usually does not exceed six years, and it is already more than two years since the date of these biopsies." Further, during her testimony, Claimant also stated she was getting weaker and her coughing was getting worse. The Commission did not award Claimant a set amount for future medical expenses; rather, it stated Employer would be liable for any medical treatment Claimant may require in the future to relieve the effects of her occupational disease. This award was supported by competent and substantial evidence. *See, Talley v. Runny Meade Estates, Ltd*, 831 S.W.2d 692, 694–95[3] (Mo.App.1992) (sufficient evidence supported award of future medical benefits where claimant testified she was still having migraine headaches and none of the doctors who testified were able to say she would not have problems in the future). Point denied.

The Commission's award is affirmed.

CRANE, P.J., and CRANDALL, J., concur.