**Douglas ORR, Employee–Respondent,**

v.

**CITY OF SPRINGFIELD,
Employer–Appellant.**

**No. 25375.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 23, 2003.

Petition for Rehearing and Transfer Denied
Oct. 16, 2003.

Application for Transfer Denied
Nov. 25, 2003.

Patrick J. Platter, Neale & Newman, L.L.P., Springfield, MO, for Appellant.

Richard D. Crites, Richard D. Crites & Associates, Springfield, MO, for Respondent.

JAMES K. PREWITT, Judge.

The City of Springfield ("Employer") appeals a decision by the Labor and Industrial Relations Commission ("Commission") affirming and incorporating an award of the Division of Workers' Compensation. In that award, the Administrative Law Judge ("ALJ") concluded that Employer was responsible for future medical treatment for the effects of injuries suffered by Douglas Orr ("Employee") and that Employee sustained a permanent partial disability of twenty percent of the body as a whole.

Employer appeals only the portion of the decision awarding Employee future medical treatment. Employer contends that the Commission erred in admitting the testimony of Dr. Dennis Robinson because Employee violated § 287.210.3, RSMo 2000, by failing to produce a complete medical report at least seven days prior to Dr. Robinson's deposition testimony concerning the issue.

■ The primary purpose of Workers' Compensation law is to place responsibility on employers to cover losses suffered by their employees resulting from injuries arising out of and in the course of employment. *Cochran v. Indus. Fuels & Resources, Inc.*, 995 S.W.2d 489, 492 (Mo. App.1999). The law should be interpreted broadly, so that its benefits will extend to the greatest number of employees. *Id.* Any questions as to the right of an employee to compensation are resolved in favor of the employee. *Id.*

■ In a review of a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Williams v. City of Ava*, 982 S.W.2d 307,

310 (Mo.App.1998). Where, as here, the Commission attaches and incorporates the ALJ's award, this Court considers the findings and conclusions of the Commission as including the ALJ's award. *Cochran*, 995 S.W.2d at 492. We will not disturb the award unless it is not supported by substantial evidence or is clearly contrary to the weight of the evidence. *Lorenz v. Sweetheart Cup Co., Inc.*, 60 S.W.3d 677, 679 (Mo.App.2001).

■ We may not substitute our judgment on the weight of the evidence and the credibility of witnesses for that of the Commission, for those issues are within Commission's purview to determine. *Williams*, 982 S.W.2d at 310. However, Commission decisions that are interpretations or applications of law, rather than determinations of fact, are reviewed for correctness without deference to the Commission's judgment. *Maxon v. Leggett & Platt*, 9 S.W.3d 725, 729 (Mo.App.2000).

■ This court will modify, reverse, remand, or set aside an award by the Commission only if it acted without or in excess of its powers, the award was procured by fraud, findings of fact by Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495, RSMo 2000. Our review involves a two-part analysis. *Maxon*, 9 S.W.3d at 729. First, we examine the record as a whole, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. *Cochran*, 995 S.W.2d at 494. If not, the Commission's award must be reversed. *Id.* If competent and substantial evidence supporting the award exists, we must then determine whether the Commission's findings and award are nevertheless clearly contrary to

the overwhelming weight of the evidence contained in the record before the Commission. *Maxon*, 9 S.W.3d at 729.

The facts surrounding the injury are not disputed. On December 15, 1994, Employee, then a police officer for the City of Springfield, injured his lower back as he exited his patrol car. He reported the incident to Employer and four days later went to the emergency room due to increasing pain and was admitted for a one-night stay in the hospital.

Based on Employer's referral, Employee next saw Dr. Norbert Belz, the Director of the Center for Environmental and Occupational Health. Conservative therapy did not help, and Dr. Belz referred Employee to Dr. Courtney Whitlock, who performed a lumbar myelogram and post myelogram CT, which showed a herniated nucleus pulposus at L4–5. Dr. Whitlock performed surgery, specifically a laminectomy and disectomy at L4–5, on February 6, 1995. Following surgery, while still under the care of Dr. Belz, Employee underwent a course of physical therapy and a work hardening program; however, his back pain persisted and even became worse.

Employee last saw Dr. Belz on August 1, 1995. In a report dated that same day, Dr. Belz indicated that Employee remained "symptomatic and is deemed a high risk for reoccurrence if returned to his prior occupation as a police officer." Dr. Belz further noted that Employee "does persist with low back pain" and "[g]iven the persisting symptoms of low back pain and the stressors anticipated in his future employment, [Employee] agrees that police work is not is his best interest for the future." Dr. Belz recommended that Employee not perform police work that involved apprehension or arrest and that he only occasionally lift more than 40 pounds, could frequently lift 25 pounds, and "avoid far reach with forward flexion

in excess of 20 degrees and a lateral twist." Dr. Belz found that Employee had achieved maximum medical improvement as of August 1, 1995, and had sustained a permanent partial disability of fifteen percent of the body as a whole. Dr. Belz made no mention in his report as to whether or not future medical treatment was necessary.

On October 19, 1995, also at the referral of Employer, Employee was examined by Dr. Terry Winkler, a physician affiliated with Ozark Rehabilitation Services. Dr. Winkler noted that Employee described his "pain as a constant radiating pain across the hips bilaterally." Driving and prolonged sitting or standing increased the pain. Employee informed Dr. Winkler that he took the prescription medication Lodine for the pain.

Dr. Winkler's restrictions were similar to those indicated by Dr. Belz. Dr. Winkler found Employee had decreased range of motion of the lumbar spine, with "decreased intersegmental movement at L4 and 5." Dr. Winkler described Employee's status as of October 19, 1995 as "post laminectomy and diskectomy for herniated disk." Dr. Winkler rated Employee's injury as a permanent partial disability of twenty percent of the body as a whole and indicated that Employee was at maximum medical improvement. No reference was made in Dr. Winkler's report to a need for future medical treatment.

Before and after the injury, Employee also saw Dr. Dennis Robinson, Employees' personal physician who practiced at the Marshfield Family Clinic, for various illnesses or injuries. Visits from 1995 through 2001 show diagnoses from Dr. Robinson of "back disorder nec and nos" and indicate Employee received cortisone shots and was prescribed muscle relaxers and pain medication, including Lodine, a nonsteroidal anti-inflammatory medicine

for use on a regular basis, and Darvocet and other narcotic pain medications for more acute flare-ups. In 1995, Dr. Robinson referred Employee to Dr. Michael Clarke, an orthopedic surgeon, in 1997 to Dr. Bert Parks, a neurosurgeon, and in 1999, to a pain clinic, all in reference to Employee's continued pain in his lower back.

On April 23, 2001, a deposition was taken of Dr. Robinson. According to the record, Employee produced medical records covering five years of treatment from Dr. Robinson on April 16, 2001.

On three occasions during the direct examination of Dr. Robinson at the deposition, Employer objected to a question or Dr. Robinson's response to a question based on the information not having been provided to Employer seven days prior to the deposition. In the first instance, Employer objected to a question of Dr. Robinson as to whether Dr. Parks had performed an MRI. In the second instance, when Dr. Robinson was asked whether he had an opinion as to the cause of Employee's back pain for which Dr. Robinson had treated Employee since 1995, Employer objected on the basis that such an opinion had not been provided seven days prior to the deposition. Employer also objected when Dr. Robinson was asked his opinion on whether the back pain and treatments provided would "stop today or will it continue on." Employer again objected on the basis that such a conclusion was not provided seven days prior to the deposition.

Dr. Robinson's answer to the third question was that he "would be very surprised to find [Employee] improved. He will continue to have back problems and I would imagine that based upon my experience with other patients that later on down the road he would be a candidate for some fusion surgery." Employer "move[d] to strike the reference to surgery on the basis it [was] not couched in terms of reasonable certainty or probability and it [was] past the scope of the doctor's visits."

At the start of the hearing held on April 24, 2001, as the exhibits were being discussed, the ALJ inquired as to whether there were any foundational objections to the exhibits. Employer indicated that it had none, but that with respect to Dr. Robinson's deposition, it had "made various objections in the text of the transcript, and we would ask that those be taken with the case when the Division has that under advisement." The AlJ noted that the objections would be reserved.

Then the following exchange occurred.

[Counsel for Employee]: Judge, I would like the record also to note that the Commission has offered [Employer] an opportunity for continuance, and I discussed that with [counsel] and said I would not oppose that if he wanted to have one, and he said that he would proceed here today.

[Counsel for Employer]: That's with respect to the matter we spoke about, Judge, concerning the scope of the report that Dr. Robinson submitted before his testimony. It was actually records that were produced instead of a report. We did make several objections with respect to future medical treatment on the basis of Section 287.210, otherwise known as the seven-day rule. I think that's how I phrased it during the testimony last night, the seven-day rule. In support of that we would offer *Lane v. Schreiber Foods*, 903 S.W.2d 616 (Mo. App.S.D.1995).

[ALJ]: In response to your seven-day rule objections to the deposition, as we discussed before we went on the record, if you would request a continuance pursuant to those, I would grant that. Are you going to request a continuance pursuant to that objection?

[Counsel for Employer]: No we're not, your Honor. The Division has graciously requested (sic) that. However, the City believes in light of all the circumstances that we need to proceed today since [Employee] is entitled to a hearing and we would like to have the hearing resolved as well. We would like to go ahead and have resolution or expedition today—

. . . .

So while I'm very—while I appreciate the offer, we would prefer to stand on our—we feel that we need to stand on our position on the basis of the case law. Thank you.

In the award dated December 4, 2001, the ALJ found "based on Dr. Robinson's opinions that the claimant's need for future medical treatment is caused by the original injury of December 15, 1994. The employer and insurer are required to provide future medical treatment and as a result shall pay a competent physician, and medical treatment recommended by the physician, to cure and relieve the claimant of the effects of the injuries."

Employer filed an application for review of the decision to the Commission, which affirmed the award and the decision of the ALJ on December 3, 2002. In the Commission's decision, it commented on the evidentiary issue raised by Employer in its application for review. The Commission noted that during Dr. Robinson's deposition, Employer did raise objections based on the seven-day rule, but did not request a continuance. In addition, when allowed the opportunity to request a continuance at the hearing, Employer chose to proceed. The Commission referenced changes in § 287.210.3, but indicated that the changes "did not change the provisions with regard to the grounds for continuance." The Commission also cited *Polavarapu v. General Motors*, 897 S.W.2d 63 (Mo.App.1995),

as possibly allowing the testimony on other grounds. Under either rationale, the Commission determined allowing the admission of Dr. Robinson's testimony was not in error and therefore, the award and decision of the ALJ were affirmed.

■ In this appeal, Employer raises one point relied on in which it contends that the Commission erred in awarding future medical treatment because there was no substantial evidence to support such an award in that the Commission misapplied the law when it admitted Dr. Robinson's testimony concerning that issue. According to Employer, Employee failed to produce a complete medical report at least seven days prior to Dr. Robinson's deposition, that included information of future medical treatment.

Employer points to changes to § 287.210.3 and argues that such changes affect the precedential value of case law that interpreted the section prior to the change. Section 287.210.3 reads as follows, with the changes made in 1990 indicated in bold.

3. The testimony of any physician who treated or examined the injured employee shall be admissible in evidence in any proceedings for compensation under this chapter, but only if the medical report of the physician has been made available to all parties as in this section provided. Immediately upon receipt of notice from the division or the commission setting a date for hearing of a case in which the nature and extent of an employee's disability is to be determined, the parties or their attorneys shall arrange, without charge or costs, each to the other, for an exchange of all medical reports, including those made both by treating and examining physician or physicians, to the end that the parties may be commonly informed of all medical findings and opinions. The exchange of medical reports shall be made

at least seven days before the date set for the hearing and failure of any party to comply may be grounds for asking for and receiving a continuance, upon proper showing by the party to whom the medical records were not furnished. If any party fails or refuses to furnish the opposing party with the medical records of the treating or examining physician **at least seven days before such physician's deposition or personal testimony at the hearing** as in this section provided, upon the objection of the party who was not provided with the medical report, the physician shall not be permitted to testify at that hearing **or by medical deposition.**

Employer argues that the opinion of *Goodwin v. Farmers Elevator & Exchange,* 933 S.W.2d 926 (Mo.App.1996) is not applicable to our analysis, because it referred to § 287.210.3 prior to the 1990 changes. Employer also contends that *Lane v. Schreiber Foods, Inc.,* 903 S.W.2d 616 (Mo.App.1995) is dispositive to our analysis and requires the exclusion of Dr. Robinson's testimony.

In *Goodwin,* which considered the statute prior to the changes that made § 287.210.3 and its seven-day rule applicable to depositions, the Court noted that a party that does not receive a medical report in compliance with § 287.210.3 has at least two options. 933 S.W.2d at 929. The party may cross-examine the physician immediately after direct and reserve time for additional later cross-examination if necessary, or the party may postpone all cross-examination until there is an opportunity to review the testimony. *Id.* The Court in *Goodwin* determined that although there was a violation of the seven-day rule, admitting the testimony of the physician was not in error because the party who was adversely affected by the violation failed to object or assert any request for relief and thus, was not prejudiced. *Id.*

In *Eubanks v. Poindexter Mech. Plumbing & Heating,* 901 S.W.2d 246 (Mo.App. 1995), which considered § 287.210.3 post 1990, we indicated that the Commission has discretion to reject medical reports that are not furnished in compliance with the seven-day rule, but was not required to do so. *Id.* at 248. We concluded that the remedy indicated in the statute was a continuance and that none was sought in *Eubanks.* *Id.* Further, we determined that "[i]f the challenged evidence were essential to a finding, but inadmissible because hearsay, a remand to give the claimant an opportunity to put the evidence in admissible form would be appropriate, especially when the Commission has admitted the evidence and it provides expert opinion supportive of the award." *Id.* In *Eubanks,* such a remand was unnecessary because the finding was supported by competent and substantial evidence that was unchallenged. *Id.*

In *Polavarapu,* to which the Commission referred in its final award, the employer alleged that the Commission's award of future medical expenses and treatment was erroneous because it was based on testimony inadmissible due to violation of the seven-day rule. 897 S.W.2d at 65. The case considered the statute post 1990. *Id.*

The employer argued that the physician's testimony regarding future medical treatment was inadmissible because his medical report did not contain any reference to the issue. *Id.* at 66. The employer objected to the admission of the physician's report at the hearing and the claimant withdrew her request for admission. *Id.* The Court concluded that since the record was not admitted and thus, not included in the record on appeal, it was unable to determine whether or not it contained reference to future medical treatment. *Id.* However, it determined that there was no prejudice to the em-

ployer because the award of future medical treatment was supported by sufficient evidence absent the physician's testimony. *Id.*

In *Lane,* the analysis referred to another provision in the statute, § 287.210.5, which was not changed in 1990. That provision reads as follows.

5. As used in this chapter the terms "physician's report" and "medical report" mean the report of any physician made on any printed form authorized by the division or the commission or any complete medical report. As used in this chapter the term "complete medical report" means the report of any physician giving the physician's qualifications and the patient's history, complaints, details of findings of any and all laboratory, X-ray and all other technical examinations, diagnosis, prognosis, nature of disability, if any, and an estimate of the percentage of permanent partial disability, if any. An element or elements of a complete medical report may be met by the physician's records.

According to the Court in *Lane,* "[a] report that is incomplete warrants disallowance of the doctor's testimony about the excluded matter although the doctor is allowed to testify to matters included in the report." 903 S.W.2d at 619. The Court determined that the Commission did not err in excluding the physician's testimony because the report only contained the factors the physician considered in arriving at the conclusion that the claimant's disability was greater because of a previous emotional disorder, rather than the conclusion itself. *Id.* at 61–62.

Although Employer suggests *Lane* is dispositive, we consider *Goodwin,* when taken in conjunction with the other cases noted, to be dispositive and do not find it inapplicable simply because the case considered the pre 1990 § 287.210.3. As noted in *Eubanks,* the statute contemplates con-

tinuance as the remedy to a violation of the seven-day rule violation. 901 S.W.2d at 248. We agree with the Commission that the changes to § 287.210.3 "did not change the provisions with regard to the grounds for continuance."

Here, Employer failed to request a continuance, even after Employee indicated he would be amenable to a continuance and the ALJ indicated a continuance would be granted if one was requested. Employer chose to proceed with the hearing. Thus, as in *Goodwin,* Employer was not prejudiced because of the failure to ask for relief under the statute. 933 S.W.2d at 929. Therefore, we ' need not address whether sufficient evidence existed absent Dr. Robinson's testimony.

The award and decision of the Commission is affirmed.

BARNEY, P.J., and GARRISON, J., concur.