Patrick PAVIA, Employee–Respondent,

v.

SMITTY'S SUPERMARKET,
Employer–Appellant.

No. SD 31275.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 17, 2012.

Motion for Rehearing and Transfer
Denied March 9, 2012.

Application for Transfer Denied
May 1, 2012.

J. Bradley Young, Roberts Perryman, P.C., St. Louis, MO, for Appellant.

Matthew J. Sauter, Sauter Sullivan, L.L.C., St. Louis, MO, for Respondent.

GARY W. LYNCH, Judge.

Smitty's Supermarket ("Employer") appeals the decision of the Labor and Industrial Relations Commission ("Commission") dismissing Employer's motion for a determination of a change in condition. Employer contends that the Commission erred as a matter of law in that it improperly interpreted section 287.470 [1] by failing to strictly construe it as required by section 287.800, RSMo Cum.Supp.2005, and

---

[1] References to statutes are to RSMo 1994, unless otherwise indicated.

by arbitrarily disregarding competent and substantial evidence proffered by Employer's medical expert. Finding no merit in Employer's contentions, we affirm.

### Factual and Procedural Background [2]

Patrick Pavia ("Claimant") suffered physical injuries at the age of seventeen while working for Employer at its facility in Waynesville, Missouri, on February 26, 1996. At that time, he was working as a bagger and was attempting to reach packages of Kleenex that were stacked in the warehouse area of the grocery store. Claimant stood on a wooden pallet and a fellow employee, an assistant manager, lifted the pallet into the air with a forklift. After reaching a height of approximately 15 to 20 feet, Claimant fell off the pallet and onto the floor of the warehouse, where he remained unconscious and unresponsive.

After receiving emergency treatment at a local hospital, Claimant was flown to University Hospital in Columbia, Missouri, where he was diagnosed as having a severe closed head injury, subdural hematoma, subarachnoid hemorrhaging, and a cervical spine fracture. A halo placement surgical operation was performed for treatment of his cervical fracture. Claimant remained at the hospital until February 29, 1996, when he was transferred from the neurosurgery intensive care unit to the traumatic brain injury program at Rusk Rehabilitation Center. Claimant remained at Rusk Rehabilitation Center until March 22, 1996. He was then enrolled in the Bridge Outpatient Program through the University Hospital and received full-team rehabilitation, occupational therapy consultation, speech and language pathology consultation, social services consultation, physical therapy, therapeutic recreation, rehabilitation nursing, and ophthalmology consultation from April 1, 1996, through May 24, 1996. The Bridge Outpatient Program discharge notes indicated that Claimant continued to display cognitive dysfunction, including distractibility and inattention. Claimant also continued to have difficulty with reading comprehension and mathematic skills. Claimant's care team recommended that he be scheduled for a full battery of neuropsychological testing in the future.

Claimant filed for workers' compensation benefits. Following a contested hearing, an Administrative Law Judge ("ALJ") found, *inter alia,* that Claimant "suffered a 20% Permanent Partial Disability of the body as a whole at the level of his neck resulting from the C–6 fracture, and a 50% Permanent Partial Disability of the body as a whole referable to [Claimant's] traumatic brain injury" and determined that he was 70% permanently disabled. Additionally, the ALJ found that Employer's assistant manager had failed to utilize an available safety cage when elevating Claimant with the forklift and that Employer had not posted notice warning of the dangers of elevating an employee on a forklift without using the safety cage. Accordingly, the ALJ determined that Employer should be assessed a 15% penalty to be added to Claimant's permanent partial disability award for failure to comply with the safety provisions of section 292.020. Following the ALJ's decision, Employer filed its application for review before the Commission.

In its Order issued November 6, 2002, the Commission modified the ALJ's decision. It determined that Claimant was

**2.** This Court affirmed in part and reversed in part the original workers' compensation award in this case in *Pavia v. Smitty's Super- market,* 118 S.W.3d 228 (Mo.App.2003). We borrow freely from that opinion without further attribution.

permanently and totally disabled and awarded him weekly benefits in the amount of $460.00 per week for life, inclusive of the 15% penalty awarded pursuant to sections 292.020 and 287.120.4, together with additional monies representing the 15% penalty as applied to Claimant's medical expenses and his temporary total disability payments. This Court affirmed in part and reversed in part the Commission's decision, finding that the Commission's determinations that Claimant was permanently and totally disabled and that Employer violated the safety standards in section 292.020 were supported by substantial evidence, but finding error in the Commission's calculation of Claimant's rate of compensation. *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228 (Mo.App. 2003). Claimant's weekly benefits were ultimately reduced.

Sometime during the year after the accident, Claimant got a job at Sellers–Sexton, an automobile dealership in St. Robert. Claimant worked at Sellers–Sexton from 1997 to 1999, when he left to attend school in Springfield. He returned to Sellers–Sexton in 2000 and remained employed there until 2003. During his tenure at Sellers–Sexton, Claimant detailed vehicles for approximately three years, worked in customer service for approximately one year, and was a salesman for approximately one year. At the time of the first award, Claimant was also employed as a bellman at the Holiday Inn in Springfield. Part of his job involved occasionally picking up guests from the airport.

In 2003, Claimant left Sellers–Sexton and began working at the Family Golf Center, his family's driving range and miniature golf business in Lebanon. He would pick up golf balls, cut grass, and sell golf balls to customers. He did not receive a paycheck. Claimant worked there until 2005 or 2006, when his parents divorced and sold the business.

Shortly thereafter, Claimant got a job with Harris Cabinets, where he worked for approximately two years and earned $9.00 per hour. Claimant was hired after meeting the owner at the Family Golf Center. Claimant's initial job was a cabinet builder, wherein he constructed "the frames to the front of the cabinets." This position involved completing "the same tasks over and over and over again[.]" He did not have much to do with the actual measurements. Claimant did spend approximately six months doing installation, but he had difficulty remembering measurements and sometimes put "the wrong piece in the wrong place." He was ultimately let go from the company due to an economic downturn.

In January 2007, Employer filed with the commission a motion for determination of a change in condition pursuant to § 287.470. The cause was remanded to the Division of Workers' Compensation for a hearing. The Commission denied Employer's motion on July 13, 2009, due to Employer's failure to timely present evidence of Claimant's alleged change in condition.

Following a brief period of unemployment, in December 2008, Claimant was hired as a manager trainee at Enterprise Leasing in Lebanon. He had applied for the job through the Lebanon Career Center. Claimant was still employed at Enterprise as a manager trainee when, on April 9, 2010, Employer filed a second motion for a determination of a change in condition, pursuant to section 287.470. Employer alleged, *inter alia*, that it had evidence showing that Claimant's cognitive condition had improved since the issuance of the original award. The Commission again ordered the cause remanded to the Division of Workers' Compensation for a hearing, which took place September 20,

2010. At this time, Claimant was still employed as a manager trainee at Enterprise, even though the usual training period lasts only six months. He had also received two memoranda warning of possible termination if his performance did not improve.

At the hearing, the deposition and report of Dr. Wayne Stillings were offered in support of Employer's motion. Dr. Stillings conducted a psychiatric independent medical examination on Claimant on June 10, 2010, which included several psychological tests and an interview with Claimant; Dr. Stillings did not interview any of Claimant's family members. Dr. Stillings was of the opinion that Claimant "has experienced a change in his physical functional capacity since 2002 based on his occupational functional capacity, being able to live independently, marrying and having a 2.5–year–old daughter for whom he cares physically and emotionally and provides appropriate parental care, and his ability to function as an adult[.]" Although Claimant had been diagnosed with dementia in 1998, Dr. Stillings found no evidence of dementia. Dr. Stillings also found no evidence of expressive aphasia, even though Claimant had been found to have difficulty expressing himself shortly after the accident. Dr. Stillings went on to state that Claimant "exhibits only very mild cognitive dysfunction in the area of immediate audio/verbal learning, which is easily compensated by a single repetition." Dr. Stillings was "unable to identify any occupation from which he is restricted based on his cognitive abilities or otherwise[,]" and he saw "no active signs of a traumatic brain injury." He later qualified that statement by saying that Claimant does have "a couple little residuals from the traumatic brain injury which you would expect, but they're not impairing." He also found Claimant to be lacking in self-insight. Dr. Stillings opined that the

apparent improvement in Claimant's diagnoses and cognitive function evidenced a physical change in the condition of Claimant's brain; he also stated that Claimant's ability to play golf at a high level was further evidence of such a change. Dr. Stillings discussed in general "the physical changes that occur in a young plastic brain[,]" but did not conduct an MRI or other physical test on Claimant to compare to earlier MRIs and to show that those changes had in fact occurred in Claimant's brain. This was Dr. Stillings' only examination of Claimant.

Claimant offered the deposition of Dr. Raymond Cohen in opposition to Employer's motion. Dr. Cohen had previously examined Claimant, once in October 1998 and again in May 2000, and he subsequently examined Claimant in July 2010 in response to Employer's motion in this case. On each occasion, Dr. Cohen interviewed Claimant and performed a physical examination. Prior to examining Claimant in July 2010, Dr. Cohen reviewed Dr. Stillings' report. He also reviewed a rehabilitation report from 2004 and various depositions, including that of Claimant taken on June 7, 2010.

During the most recent examination, Dr. Cohen spoke with Claimant's wife. She told Dr. Cohen that "she [does] everything ... including the shopping, all of the financial aspects of their life, nearly all of the errands that [have] to be done." Her main goal is to get Claimant to work each day by 7:45 a.m. and leave nothing for Claimant to think about except work. Claimant's responsibilities consist of laying his clothes out each night, setting his alarm, and making himself coffee; Claimant's wife takes care of everything else. According to Claimant's wife, their house is covered in sticky notes reminding Claimant to do things, and she often becomes frustrated because he cannot remember

things she has told him. Although Claimant is able to care for their young daughter, he cannot be trusted to remember to pick her up from her babysitter or any other location. Claimant's wife believes that she has taken over all of the responsibilities previously assumed by Claimant's mother. She has not noticed any improvement in Claimant's memory since she has known him—approximately eight years at the time of the examination—and finds Claimant to be more immature than his friends and lacking responsibility. She also told Dr. Cohen that Claimant continues to knock things over and be clumsy, a problem which worsens when Claimant is tired.

Dr. Cohen was of the opinion that there had not been a significant change in Claimant's condition since he had last examined Claimant. Claimant continues to have neck pain, which had worsened during the six months before Dr. Cohen's examination; his range of motion has also diminished. While Dr. Cohen felt Claimant's job at Enterprise was different than any previous job, he felt it was "not significantly different as far as his brain behavior is concerned[.]" Claimant also told Dr. Cohen that he fears losing his job on a daily basis because he has already been written up twice for sub-par performance and because he knows that he makes mistakes. He also fears for his job because he has far exceeded the usual timeframe for promotion out of the training period. Claimant takes longer than his coworkers to complete tasks and feels that he has been able to remain at Enterprise because many of the customers have been there before and recognize him. Dr. Cohen does not think Claimant would be able to complete any type of schooling. While Dr. Cohen feels that Claimant's condition has improved, "it's very borderline on the improvement." Dr. Cohen stated that Claimant "tries real hard, but he's very similar

to when I saw him before." He also stated that, in his opinion, Claimant puts on a show of strength and demonstrates "a lot of denial" about the severity of his injury. Dr. Cohen still believes that Claimant is not employable in the open labor market and does not believe that Claimant could function at his current level and remain employed at Enterprise without the constant assistance from his wife.

During Dr. Cohen's physical examination of Claimant, he noted various physical issues, including a limited range of motion in the cervical spine, accompanied by moderate discomfort; a right hemioptic field cut to both eyes; a pronator drift affecting Claimant's right arm; and mild uncoordination in finger-to-nose, finger-to-finger, and heel-to-shin testing. Dr. Cohen also noted short-term memory difficulties. Ultimately, Dr. Cohen's diagnoses remained unchanged from his previous examinations of Claimant.

During the hearing, Claimant testified that the problems with his vision have not improved since the initial award hearing in 2002. He still suffers from double vision, which affects his coordination and ability to play sports or do other activities. He still occasionally stops at green lights while driving. He still has problems with his depth perception; e.g., when reaching for a glass, he will instead knock it over. Claimant also testified that he continues to have neck pain, stiffness, and headaches, none of which have improved since the initial award. He further stated that his current job at Enterprise is similar to his previous job as a used-car salesman at Sellers–Sexton as it pertains to cognitive ability.

Claimant's wife testified that, at the time of trial, she had known Claimant for approximately eight years and had been married to him for five. She stated that

Claimant's inability to multi-task has not improved since she's known him, nor has his inability to handle money. She has observed Claimant's problems with depth perception, in that he will knock things over when he reaches for them, and stated that Claimant slurs his speech on a daily basis, particularly "[a]fter work and when he's tired[.]" Neither of these problems has improved in the time she has known Claimant. Claimant's wife went on to state that Claimant will stop at green lights "[p]robably eight out of ten times[,]" and that this happens both during the day and at night. This, too, has not improved. She sees Claimant act clumsily or trip over "pretty much nothing" at least twice a week. This clumsiness, likewise, has not improved. According to his wife, Claimant has no organizational or planning skills and frequently makes inappropriate comments. As for the sticky notes around their home, Claimant's wife testified that she will leave multiple notes referencing the same subject in various locations in order to help Claimant remember.

Claimant's mother similarly testified that Claimant seemed to simply not mature following his accident. She stated that she notices a "big difference" in maturity between Claimant and her other grown children. She has not noticed any change in Claimant's organizational abilities and has also observed Claimant make inappropriate comments.

The Commission dismissed Employer's motion on March 22, 2011. The Commission found that, although Employer had presented evidence that Claimant had undergone numerous life changes since the original award in 2002, it "did not present any new MRI scans of [Claimant's] brain or any other concrete evidence showing an actual **physical change in condition** of [Claimant's] brain." The Commission relied on *Bunker v. Rural Elec. Coop.*, 46 S.W.3d 641 (Mo.App.2001), and *Sachs Elec. Co. v. Mapes*, 254 S.W.3d 900 (Mo.App. 2008), in reaching its decision, noting that the former defined the requisite change in condition as found in section 287.470 to mean a change in the physical condition of the claimant, while the latter demonstrated that the 2005 amendment to the workers' compensation statutes did not apply in this case and, thus, the *Bunker* definition was still applicable. This appeal followed.

### *Standard of Review*

 In workers' compensation cases, a court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1. "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* Therefore, "[o]n a claim that an award is against the weight of the evidence, we examine the evidence in the context of the whole record to determine whether it is supported by competent and substantial evidence." *Fitzwater v. Dep't of Pub. Safety*, 198 S.W.3d 623, 627 (Mo. App.2006). Furthermore, on appeal, "in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding." Section

287.495.1. In carrying out that statutory mandate, "we defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Pavia*, 118 S.W.3d at 234. Decisions of the Commission that are interpretations or applications of law, however, are reviewed without deference to the Commission's judgment, *Orr. v. City of Springfield*, 118 S.W.3d 215, 217 (Mo.App.2003), and we review those issues of law *de novo*, *Bond v. Site Line Surveying*, 322 S.W.3d 165, 169 (Mo.App.2010).

### Discussion

Employer presents two points for our review. We address them in reverse order.

### 2005 Amendment to Section 287.800 is not Applicable

In its second point, Employer contends that the Commission "improperly interpreted § 287.470 in that the Industrial Commission failed to apply a 'strict construction' standard in its interpretation of § 287.470." We disagree.

Before 2005, section 287.470 had been held to require a demonstration of a change in a claimant's *physical* condition before the Commission could institute a change in that claimant's award. *Bunker*, 46 S.W.3d at 643–44. In 2005, the Missouri Legislature enacted sweeping changes to Missouri's Workers' Compensation Law; section 287.800, as then amended, directs that Missouri courts "shall construe the provisions of [the Workers' Compensation Law] strictly." Section 287.800, RSMo Cum.Supp.2005; *Smalley v. Landmark Erectors*, 291 S.W.3d 737, 738 (Mo.App.2009).

Employer contends that the 2005 amendment of section 287.800—requiring strict construction—enlarges the types of "change in condition" that can be proven

under section 287.470 because under a strict construction, "physical" can no longer be grafted into the wording of that section. Employer fails, however, to address or explain in the first instance the legal basis for its claim that the 2005 amendment of section 287.800 retroactively applies to Claimant's 1996 injury. Rather, Employer merely assumes in his argument, without citation to any relevant legal authority, that the 2005 version of section 287.800 applies in this case. This assumption is undermined by and contrary to two well-established legal principles.

■ First, it is a well-established principle that the law in effect on the date of the injury governs a claim under the Workers' Compensation Law. *See, e.g., Goad v. Treasurer of State*, —— S.W.3d ——, 2011 WL 5838699, at *5 (Mo.App.2011) (finding that a person's status as a dependent is determined using the law in effect at time of injury); *Busby v. D.C. Cycle Ltd.*, 292 S.W.3d 546, 549 (Mo.App.2009) (applied the version of section 287.800 in effect at the time of Claimant's pre–2005 injury); *Doerr v. Teton Transp., Inc.*, 258 S.W.3d 514, 518 n. 2 (Mo.App.2008) (noting that case was decided under the law in effect at the time of Claimant's injury before August 28, 2005, and that section 287.800 strict construction only applies to post-August 28, 2005, injuries); *Tillman v. Cam's Trucking, Inc.*, 20 S.W.3d 579, 585–86 (Mo.App.2000) (holding that subrogation rights are determined under the law in effect at time of injury); *Loard v. Tri-State Motor Transit*, 813 S.W.2d 71, 72 (Mo.App.1991) (holding statutory limitation period in effect at the time of the injury applied, not the limitation period established by amendment thereafter); *Foreman v. Shelter Ins. Co.*, 706 S.W.2d 227, 229–30 (Mo.App.1986) (same holding as that in *Loard* ).

■ Second, it is also well established that a statute is presumed to operate pro-

spectively. *State ex rel. Schottel v. Harman,* 208 S.W.3d 889, 892 (Mo. banc 2006); *Mo. Real Estate Comm'n v. Rayford,* 307 S.W.3d 686, 697–98 (Mo.App.2010); *Lawson v. Ford Motor Co.,* 217 S.W.3d 345, 349 (Mo.App.2007). While there may be exceptions to this presumption, *see, e.g., Lawson,* 217 S.W.3d at 349, we need not address them here because Employer has not asserted or argued their application.

■ Moreover, Senate Bill 1, which contained the broad changes to the Workers' Compensation Law, including the 2005 amendment of section 287.800, had an effective date of August 28, 2005. *Heiskell v. Golden City Foundry, Inc.,* 260 S.W.3d 443, 445 n. 2 (Mo.App.2008). We find nothing in Senate Bill 1 indicating that the legislature intended for this amendment to apply retroactively to injuries occurring before that effective date.

Therefore, even assuming, *arguendo,* that the "strict construction" mandate in the post–2005 version of section 287.800 would alter the interpretation of section 287.470, a determination that we need not reach and we do not make, the post–2005 version of section 287.800 does not apply to this case because Claimant was injured in February 1996 before its effective date. Employer's second point is denied.

### Commission did not Arbitrarily Ignore Evidence from Dr. Stillings

In its first point, Employer contends that the Commission erred "as a matter of law" in that it "improperly interpreted § 287.470" because it "arbitrarily disregarded and ignored competent, substantial, and undisputed evidence presented by Dr. Stillings." Again, we disagree.

■ We first note that, although Employer attempts to obtain *de novo* review by framing its point as challenging an issue of law, the issue it raises is actually one of fact. While Employer claims in its point that the Commission misinterpreted section 287.470, when examined in the context of the whole record, its argument amounts to nothing more than a claim that the Commission should have believed its evidence instead of Claimant's evidence on the fact issue of whether there had been a "change in circumstances," as required by section 287.470. Our review, therefore, is deferential to the Commission's determinations of credibility and weighing of the evidence. *See Bond,* 322 S.W.3d at 169.

We also note that Employer's point relied on and subsequent arguments are misleading, even beyond its veiled attempt to circumvent the appropriate standard of review. Employer states that Dr. Stillings' testimony regarding Claimant's change in condition was *undisputed;* however, the record is replete with testimony from other witnesses—including Claimant's expert, Dr. Cohen—refuting Dr. Stillings' opinion that Claimant has experienced a significant change in physical condition since the time of the original award. For example, Dr. Cohen stated that Claimant still suffers from vision problems, coordination problems, physical pain, and memory problems, all of which affected Claimant at the time of the original award and are in direct contradiction to Dr. Stillings' testimony. In addition, Dr. Cohen was of the opinion that there had not been a significant change in Claimant's condition since he had last examined Claimant. This testimony also directly contradicts and disputes Dr. Stillings' testimony and report.

Further, Employer claims that, in its decision, the Commission improperly *required* an MRI to demonstrate a change in the physical condition of Claimant's brain. In making this contention, Employer takes certain words in the Commission's decision out of context. While the Commission notes that "[E]mployer did not present any new MRI scans of [Claimant's] brain[,]" as Employer asserts, it goes on to

state that Employer likewise failed to present "any other concrete evidence showing an actual physical change in condition of [Claimant's] brain." Far from creating a rule that an MRI is the only acceptable evidence of a physical change in condition of a claimant's brain, as Employer contends, the Commission merely noted the absence of the test *as well as any other concrete evidence of a change in the physical condition of Claimant's brain.* Noting the absence of a recent MRI is certainly not unreasonable, considering that, as noted by the Commission in its decision and ignored by Employer in its argument, an MRI was part of the evidence relied upon to initially support the physical damage to Claimant's brain in the original award.

 We now turn to the issue, as framed by the Employer, as to whether the Commission "arbitrarily disregarded and ignored . . . evidence presented by Dr. Stillings."

> An employer, to be entitled to an order diminishing an award, must show that the original condition, upon which the award was predicated, no longer existed either because of a gradual and progressive improvement which had finally resulted in a substantially improved condition or because the original condition had suddenly cleared up.

*Bunker,* 46 S.W.3d at 645 (quoting *State ex rel. Sei v. Haid,* 332 Mo. 1061, 61 S.W.2d 950 (1933)). In its attempt to meet this burden of proof, Employer offered Dr. Stillings' deposition and report, in which he states his opinion that the physical condition of Claimant's brain has substantially improved. Dr. Stillings based his opinion on psychological testing he conducted during a single day of observing Claimant, as well as his review of Dr. Cohen's previous reports.

In response, Claimant provided the Commission with Dr. Cohen's deposition and report, as well as Dr. Cohen's previous reports conducted in 1998 and 2000. In his most recent report, Dr. Cohen states that the physical condition of Claimant's brain has not substantially improved. Dr. Cohen based his opinion on physical and psychological testing performed during a single day of observing Claimant, as well as his previous personal observations of Claimant—spanning a period of more than twelve years—his corresponding reports, and Dr. Stillings' report. Claimant further provided the Commission with his own testimony and that of his wife and mother. Employer does not contend in its point or otherwise argue that Claimant's evidence was not competent and substantial evidence such that the Commission's decision is against the overwhelming weight of the evidence.

"The Commission, as the finder of fact, is free to believe or disbelieve any evidence. . . . We defer to the Commission's findings as to weight and credibility of testimony and are bound by its factual determinations." *ABB Power T & D Co. v. Kempker,* 236 S.W.3d 43, 49 (Mo.App. 2007) (citations omitted). The Commission's determinations that Dr. Stillings was not credible and that Dr. Cohen, Claimant, his wife, and his mother were credible are necessarily implied by its express finding and conclusion that "employer failed to prove a change in the physical condition of employee[.]" Employer's first point is denied.

### Decision

The Commission's dismissal of Employer's motion for a determination of a change in condition is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.